**SINA REZ LAW, P.C.**
Sina Rezvanpour (SBN: 274769)
sina.rez@sinarezlaw.com
401 Wilshire Blvd., Fl. 12
Santa Monica, CA 90401
Telephone: (818) 784-0100
Facsimile: (818) 574-4049

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN: 249203)
ak@kazlg.com
245 Fischer Ave., Unit D1
Costa Mesa, California 92626
Telephone: (800)400-6808
Facsimile: (800) 520-5523

**KAZEROUNI LAW GROUP, APC**
Ryan L. McBride (SBN: 297557)
ryan@kazlg.com
301 E. Bethany Home Road
Suite C-195
Phoenix, AZ 85012
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

*Attorneys for Rudolfo Campos*

KAZEROUNI LAW GROUP, APC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**RUDOLFO CAMPOS and CARLOS CORRALES, Individually and on Behalf of All Others Similarly Situated,**

**Plaintiff,**

**v.**

**POLARIS, INC.,**

**Defendant.**

Case No.:

**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**

1) **CALIFORNIA'S UNFAIR CONPETITION LAW ("UCL"), CAL. BUS. PROF. CODE §§ 17200, *et seq.*;**
2) **THE SONG-BEVERLY CONSUMER WARRANTY ACT ("SBCWA"), CAL. CIV. CODE §§ 1790, *et seq.*;**
3) **BREACH OF IMPLIED WARRANTY;**
4) **UNJUST ENRICHMENT**

**JURY TRIAL DEMANDED**

## INTRODUCTION

1. This action concerns a material safety and reliability defect in hundreds of thousands of Model Year 2021 RZR Turbo S and XP Turbo vehicles (the "2021 Class Vehicles") and 2022-2023 RZR Pro XP 4 and RZR Turbo R 4 vehicles ("2023 Class Vehicles") (together the "Class Vehicles"). The 2021 Class Vehicle contained an increased risk of primary clutch failure (the "Clutch Defect"), while the 2023

Class Vehicle contained a problem with the fuel pump assembly ( the "Fuel Defect") (together "The Defect").

2. A primary clutch failure can cause serious injury or death due to the risk of this defect causing debris and/or clutch components to be ejected from the clutch housing. This typically occurs under high-load, low speed conditions.

3. A fuel leak at the fuel pump assembly joint on the fuel tank poses a substantial risk of fire hazard, which could potentially cause serious injury.

4. The Class Vehicles have been sold even with the Defect, and with no fix having been made available despite it being months since the manufacturer sent out the Defect notice.

5. Polaris, Inc., ("Polaris" or "Defendant"), has long known about the Defect from a variety of sources, and has not done anything to mitigate the issue nor provide to consumers an option to correct the Defect.

6. Despite having knowledge of the Defect, Defendant has continued to sell and lease vehicles containing the Defect.

7. Plaintiffs Rudolfo Campos and Carlos Corrales ("Plaintiffs") and the Class suffered economic injury as a result of the Defect and Defendant's concealments about the safety and security of the Class Vehicles at the time of purchase.

8. Accordingly, Plaintiffs bring this action on behalf of themselves, and other similarly situated individuals, against Defendant regarding the Defect and the subsequent failure to fix the Defect.

## JURISDICTION AND VENUE

9. Jurisdiction is proper under 28 U.S.C § 1332(d)(2) because Plaintiffs allege a national and a California class, which will result in at least one class member belonging to a different state than that of Defendant. Plaintiffs seek up to thousands of dollars in damages for each putative class member, which, when aggregated among a proposed class numbering in the tens of thousands, or more, exceeds the $5,000,000.00 (five-million dollars) threshold for federal court jurisdiction under the

KAZEROUNI LAW GROUP, APC

Class Action Fairness Act ("CAFA"). Therefore, both the elements of diversity jurisdiction and CAFA jurisdiction are present.

10. Defendant is a business with its principal place of business in Medina, Minnesota who conducts business throughout the State of California, including the Central District of California.

11. Venue is proper in this Court because Plaintiffs reside in this district and Defendant conducts substantial business in this district.

## PARTIES

12. Plaintiff Rudolfo Campos ("Plaintiff Campos") is, and at all times mentioned herein, a natural person, individual citizen and resident of the City of Hesperia, County of San Bernardino, State of California, in this judicial district.

13. Plaintiff Carlos Corrales ("Plaintiff Corrales") is, and at all times mentioned herein, a natural person, individual citizen and resident of the City of Baldwin Park, County of Los Angeles, State of California, in this judicial district.

14. Upon information and belief, Defendant Polaris, Inc is a Minnesota corporation with its principal place of business in the County of Medina, State of Minnesota.

## GENERAL ALLEGATION

15. Defendant manufactures and markets the Class Vehicles.

16. Upon information and belief, the Class Vehicles are manufactured with the same parts. Thus, all Class Vehicles suffer from the same Defect.

### Plaintiff Campos

17. On or around September 23, 2022, owners of the 2021 Class Vehicle, including Plaintiff Campos, began receiving a "Stop Ride" notice from Defendant, alerting the owners that they were no longer allowed to operate the Class Vehicle as it had a dangerous defect.

KAZEROUNI LAW GROUP, APC

18. The official website states that approximately "30,250 units globally," of the 2021 Class Vehicle have been affected, with a further "206 reports on clutch failure, including six fires and two injuries."[1]

19. While the official website notes that Defendant has "identified a repair,"[2] owners are not being made aware of this repair, or how to obtain the repair. It has been approximately five (5) months with no communication regarding the alleged repair. Further later models of vehicles from Defendant suffer from multiple manufacturing issues, indicating this is an issue with the manufacturing process of the corporation.

20. In the meantime, Owners are not allowed to operate their vehicle, nor allowed to attempt repairs themselves or from any non-Polaris authorized mechanic.

21. Thus, the Defect in the Class Vehicles inherently makes them inoperable that has led to thousands of Class Vehicles sitting idly while warranty and equity is tolling.

22. Upon information and belief, Defendant knew of the Defect in the 2021 Class Vehicles, yet failed and refused to timely disclose the Defect to consumers, selling many more vehicles in the interim.

23. Defendant concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff Campos and Class Members, in Defendant's advertising, labeling or otherwise that the 2021 Class Vehicles were, and still are, defective and are not fit for the ordinary purposes for which the vehicles are used in that they are unsafe, and worth less than they should be, if they were not defective.

24. In its address regarding the Clutch Defect, Defendant has stated that it has found a repair and plan to reach out to registered owners yet has failed to do so as of the time of the filing of this Complaint.

---

1 https://www.polaris.com/en-us/recalls/off-road/polaris-issues-stop-sale-stop-ride-notice-for-some-2021-rzr-xp-turbo-vehicles/

2 Id.



KAZEROUNI LAW GROUP, APC

**A. Defendant's Misconduct Injured Plaintiff Campos and the Class**

25. Plaintiff Campos bought a brand new Model Year 2021 RZR Turbo S on or around February 6, 2021. Unbeknownst to Plaintiff Campos at the time of purchase, he suffered economic injury due to the Clutch Defect's existence in the 2021 Class Vehicle.

26. As would a typical consumer, Plaintiff reasonably believed upon purchase that the Model Year 2021 RZR Turbo S would be fit for the ordinary purpose for its use, i.e., driving generally, especially offroad.

27. However, only a short few months after purchase, Plaintiff Campos realized the vehicle was not fit for the ordinary purpose for which it was used because of the Clutch Defect and what resulted from said Clutch Defect.

28. On or around September 2022, Defendant began circulating "Stop Ride" notices in regards to the 2021 Class Vehicle. The letter stated the vehicle should not be used, nor repaired.

Plaintiff Corrales

29. On or around November 29, 2022, owners of the 2023 Class Vehicle, including Plaintiff Corrales, began receiving a "Stop Ride" notice from Defendant, alerting the owners that they were no longer allowed to operate the 2023 Class Vehicle as it had a dangerous defect.

30. The official website states that approximately "23,230 units globally," of the 2023 Class Vehicles have been affected, with a further "10 incidents, including eight fuel leaks and two fires as a result of this concern."[3]

31. While the official website notes that Defendant has "identified and received CSPC approval on a solution for **certain** models,"[4] owners are not being made aware

[3] https://www.polaris.com/es-us/recalls/off-road/polaris-recalls-select-model-year-2021-2022-rzr-pro-xp-4-as-part-of-stop-ride-stop-sale-for-some-model-year-2021-2023-rzr-pro-xp-4-and-model-year-2022-2023-rzr-turbo-r-4-vehicles/#:~:text=Polaris%20has%20determined%20that%20some,and%20risk%20of%20serious%20injury.

[4] Id.

KAZEROUNI LAW GROUP, APC

of this repair, or how to obtain the repair. It has been approximately three (3) months with no communication regarding the alleged repair.

32. In the meantime, Owners are not allowed to operate their vehicle, nor allowed to attempt repairs themselves or from any non-Polaris authorized mechanic.

33. Thus, the Fuel Defect in the 2023 Class Vehicles inherently makes them inoperable that has led to thousands of 2023 Class Vehicles sitting idly while warranty and equity is tolling.

34. Upon information and belief, Defendant knew of the Fuel Defect in the 2023 Class Vehicles, yet failed and refused to timely disclose the Fuel Defect to consumers, selling many more vehicles in the interim.

35. Defendant concealed or otherwise failed to disclose, reveal, or provide notice to customers, including Plaintiff Corrales and Class Members, in Defendant's advertising, labeling or otherwise that the 2023 Class Vehicles were, and still are, defective and are not fit for the ordinary purposes for which the vehicles are used in that they are unsafe, and worth less than they should be, if they were not defective.

36. In its address regarding the Fuel Defect, Defendant has stated that it has found a repair and plans to reach out to registered owners yet has failed to do so as of the time of the filing of this Complaint.

**B. Defendant's Misconduct Injured Plaintiff Corrales and the Class**

37. Plaintiff Corrales bought a brand new Model Year 2022 RZR Pro XP 4 Sport on or around March 23, 2022. Unbeknownst to Plaintiff Corrales at the time of purchase, he suffered economic injury due to the Fuel Defect's existence in the 2023 Class Vehicle.

38. As would a typical consumer, Plaintiff reasonably believed upon purchase that the vehicle it would be fit for the ordinary purpose for its use, i.e., driving generally, especially offroad.

39. However, only a short few months after purchase, Plaintiff Corrales realized the vehicle was not fit for the ordinary purpose for which it was used because of the



KAZEROUNI LAW GROUP, APC

Fuel Defect and what resulted from said Fuel Defect.

40. On or around November 2022, Defendant began circulating "Stop Ride" notices in regards to the Class Vehicle. The letter stated the vehicle should not be used, nor repaired.

**C. Defendant's General Misconduct**

41. Consequently, if ordinary reasonable consumers had known of the Defect, they naturally would consider it an important and material fact in deciding whether to purchase or lease a Class Vehicle and/or how much to pay for it.

42. As a long-time automotive manufacturer, which has likely conducted numerous customer surveys and fielded thousands of complaints and warranty claims from consumers, Defendant was aware that ordinary reasonable consumers generally expect defect-free automobiles when they make a substantial investment to purchase or lease.

43. Defendant could and should have designed the Class Vehicles to be free of the Defect, particularly when they specialize in offroading vehicles.

44. Such information could easily have been made known to Plaintiffs and the Class by Defendant before Plaintiffs and the Class purchased their Class Vehicles, such as through their interactions with Defendant's dealership personnel and agents; all the various marketing and advertising Defendant undertakes (including through television, internet, social media, sporting events, and other media); by looking at their vehicles, upon which Defendant could have affixed a warning about the Defect which Plaintiffs would have necessarily seen by looking and sitting in the vehicle itself; and/or through the mail or email, as Defendant could have sent out—and indeed, regularly do send out—for the many recalls Defendant routinely issues each year.

45. Despite having knowledge of the Defect as detailed above—knowledge far superior to that of ordinary consumers such as Plaintiffs and the Class—Defendant remained silent about the Defect for the Class Vehicles until a large amount of the

KAZEROUNI LAW GROUP, APC

Class Vehicles were already sold. As a result, the public—including prospective purchasers like Plaintiffs and the Class—were unaware of the Defect.

46. The Class Vehicles have a diminished value compared to the price they commanded when purchased or leased by Plaintiffs and the Class because disclosure of the Defect would influence the purchasing and leasing decisions of ordinary reasonable consumers, including their valuation and willingness to pay for the Class Vehicles.

47. Plaintiffs and the Class lost money as a result because they did not receive what they reasonably believe they were paying for due to Defendant's omission and active concealment of the Defect, while Defendant realized a commensurate unearned gain because it did not deliver to Plaintiffs and the Class what it reasonably expected to receive in exchange for the money it paid.

48. As a result of Defendant's misconduct, Plaintiffs and the Class suffered economic injury at the time of purchasing the Class Vehicles. Particularly, either they purchased or leased vehicles that they otherwise would not have, or they paid more to own or lease their Class Vehicles than they would have paid had the Defect been timely disclosed.

49. Because the existence of the Defect in the Class Vehicles would have been patently material to a reasonable consumer, Plaintiffs and the Class would not have purchased or leased the Class Vehicles and/or would not have paid as much for them were the Defect not concealed.

50. Defendant's concealment caused Plaintiffs and the Class to pay more for the Class Vehicles than they otherwise would have, or to purchase or lease the Class Vehicles when they otherwise would have chosen not to. Stated differently, absent Defendant's misconduct, Plaintiffs and the Class would only have been willing to pay less for the Class Vehicles, if they were willing to purchase them at all.

51. By concealing the Defect, Defendant distorted the true value of every Class Vehicle such that every Plaintiffs and Class member received a vehicle of different

and substantially lesser value—one with a higher effective cost—than they reasonably believed they were receiving.

52. Stated differently, Plaintiffs and the Class surrendered more and acquired less in their transactions than they would have if Defendant had disclosed the Defect. Accordingly, Plaintiffs and the Class did not realize the benefit of the bargain in purchasing the Class Vehicles, and their expectations as ordinary reasonable consumers were not met.

53. In effect, Plaintiffs and the Class paid substantially more than the market value represented by the price bargained for, as Plaintiffs and the Class bargained on a particular market value for their respective Class Vehicles. Because the Defendant's misconduct resulted in Plaintiffs receiving less than they bargained for, Plaintiffs and the Class effectively paid a higher price than that reflected in the market price.

54. The cost of every Class Vehicle would have been lower absent Defendant's concealment of the Defect and its related misconduct, and Plaintiffs and the Class detrimentally altered their positions and suffered damages in an amount no less than the difference in value between what Plaintiffs and the Class reasonably believed they were paying for and the value of the Class Vehicle they actually received.

55. In addition to the monetary harms they have suffered, Plaintiffs and the Class Members have been deprived of their peace of mind because of the constant fear of a clutch failure, should they attempt to use their vehicle.

## CLASS ACTION ALLEGATIONS

56. Plaintiffs seeks to certify a **National Class** comprised of:

> All persons in the United States who (a) purchased and still own, and/or (b) lease or leased, a Class Vehicle.

57. In addition, Plaintiffs seeks to certify a **California Subclass** comprised of:

> All persons in the State of California who (a) purchased



KAZEROUNI LAW GROUP, APC

and still own, and/or (b) lease or leased, a Class Vehicle.

58. Unless otherwise stated, the term "Class" refers jointly and severally to the proposed National Class and to the proposed California Subclass.

59. Excluded from the Class is Defendant and its board members, executive-level officers, attorneys, and immediate family members of any such persons; the Court, the Court's immediate family, and the Court staff; and any person who asserts a personal injury or wrongful death claim caused by the Defect.

**Numerosity**

60. Defendant's website touts that "[a]t Polaris, we take great pride in our history as a category pioneer and current position as the global industry leader in powersports" [5] indicating the vast number of consumers they reach.

61. Therefore, upon information and belief, the National Class and California Subclass are comprised of a sufficiently large group of individuals—believed to be in the hundreds of thousands, if not millions—and thus is so large that it is impracticable to join all members of either the National Class or the California Subclass before the Court as individual plaintiffs.

**Typicality**

62. Plaintiffs are a member of the National Class and California Subclass, and brings claims typical of the National Class and California Subclass (which are typical of one another as well), because Plaintiffs—like all other Class Members—purchased or leased a Class Vehicle designed, manufactured, marketed, distributed, sold, and/or leased by Defendant.

63. Plaintiffs and each member of the Class received less than the full value of the Class Vehicles due to the Defect and Defendant's uniform omissions and concealment of the Defect. Class members, as ordinary reasonable consumers like Plaintiffs, would not have purchased the Class Vehicles or paid as much to own or

[5] https://www.polaris.com/en-us/about/



KAZEROUNI LAW GROUP, APC

lease them had Defendant not concealed the Defect, which was unknown to Plaintiffs and the Class alike.

64. Thus, Plaintiffs and the Class have all been damaged by Defendant's pattern of misconduct—which is common to all Class members—and have suffered the same economic harms. In other words, Defendant's misconduct is common to all Class Members and constitutes a shared factual nexus of injury to the Class.

65. Plaintiffs and the Class were exposed to the same or substantially similar material omissions regarding the safety and merchantability of the Class Vehicles; as ordinary consumers, all shared reasonable and foreseeable expectations regarding the safety and merchantability of the Class Vehicles; and all were harmed by the same omissions—namely, Defendant's concealment of the Defect.

66. Plaintiffs and each Class Member suffered economic damages that are calculable on a class-wide basis. The claims all arise from a single course of conduct and each Class member would therefore individually bring substantively identical legal and factual arguments to establish Defendant's liability for its misconduct.

67. There are no defenses available that are unique to the Plaintiffs.

**Commonality & Predominance**

68. The Class is united by a community of interest in obtaining appropriate remedies, including injunctive relief, repair or replacement of the defective vehicles, restitution, damages, and other available relief designed to redress Defendant's wrongful conduct. This action involves questions of law and fact that are common to the Class that are susceptible to common answers and that predominate over any individual questions specific to any Class Member. These include, but are not limited to the following:

a. Whether the Class Vehicles contain the Defect;
b. Whether the Defect constitutes a material fact to an ordinary reasonable consumer;
c. Whether an ordinary reasonable consumer would have purchased or

KAZEROUNI LAW GROUP, APC

leased a Class Vehicle had the Defect been disclosed;

d. Whether an ordinary reasonable consumer would have paid less money to purchase or lease a Class Vehicle had they known of the Defect—and if so, how much less they would have paid;

e. Whether the Class Vehicles commanded a premium relative to their actual value in light of the undisclosed Defect;

f. Whether and when Defendant had actual or constructive knowledge of the Defect;

g. Whether Defendant had and has a duty to disclose the Defect to the Class and whether it fraudulently concealed the Defect;

h. Whether Defendant breached any or all applicable warranties with respect to the Class Vehicles;

i. Whether Defendant breached other duties or violated other applicable laws by omission, including concealment of the Defect;

j. Whether Defendant breached obligations to provide timely repairs for the Class Vehicles;

k. Whether and to what extent Defendant is liable for damages, restitution, diminution in value, out-of-pocket expenses, and other losses incurred by the Class as a result of the Defect;

l. Whether Defendant should be declared legally and financially responsible for notifying the Class of the Defect and of their right to whatever relief to which the Class is entitled; and

m. Whether and to what extent other equitable or injunctive relief is appropriate to remedy the harms caused by Defendant's misconduct and to prevent further such harms.

69. These common issues will drive the resolution of the litigation in that their determination will resolve in one stroke issues that are central to the validity of each Class Member's claims.



70. The factual and legal issues identified above:

a. Remain common to the Class;

b. Arise from a common course of conduct and systemic policy decisions made by Defendant;

c. Predominate in number and importance over questions that may not be common to the class; and

d. Preclude neither class-wide calculation of damages nor the methodological determination of how such damages should be allocated among Class members.

**Adequacy of Representation.**

71. Plaintiffs are an adequate Class representative because Plaintiffs' interests do not conflict with the interests of the Class Members. Plaintiffs commit to protecting the interests of the Class without exercising personal interest or otherwise acting in a manner inconsistent with the best interests of the Class generally.




72. Plaintiffs have retained attorneys with exceptional experience in complex litigation, including extensive class action experience and experience in handling consumer protection cases and product liability cases, including automobile defect claims. The firms and lead counsel for the firms retained by Plaintiffs also have substantial trial experience, individually and collectively. Plaintiffs and their attorneys will responsibly, ethically, and vigorously advocate on behalf of the Class, and Plaintiff's counsel have ample resources to do so.

**Superiority**

73. This class action is superior to the other means available to the Class to obtain relief because:

a. The damages suffered by individual Class Members are relatively small compared to the burden and expense of individual litigation of the claims described here against Defendant so that making the Class whole in the absence of a class action is unlikely and impracticable;

b. Class Members accordingly have relatively less interest in individually controlling the prosecution of separate actions (if they even are aware of the issue); and it cannot be said that the interests of individuals pursuing individual cases in conducting separate lawsuits is so strong as to call for denial of a class action;

c. Denial of class treatment runs the risk of establishing incompatible standards of conduct for Defendant, discouraging the prosecution of meritorious but relatively small claims, and it may result in adjudications which would be dispositive of the interests of other Class Members who are not parties to the adjudication, or otherwise substantially impair the ability of Class Members (and Defendant) to protect their rights and interests;

74. Defendant has no facially plausible interest in defending against separate, geographically dispersed claims and, in fact, that would be more burdensome to Defendant than defending against all potential claims in a single forum and proceeding.

75. Likewise, the judicial system has no interest in burdening a number of courts when the claims of a cohesive class can be fairly and efficiently concentrated and managed by this Court. The claims are indeed manageable because they are governed by one state's law or by the laws of more than one state that are consonant with one another.

76. Further, the class procedure is designed to result in the fair, uniform, and efficient adjudication of the sorts of claims presented by this Complaint.

77. Defendant's misconduct impacts all Class Members, whose losses are capable of calculation on a Class-wide basis.

**Injunctive and Declaratory Relief**

78. Defendant has acted or refused to act on grounds generally applicable to the Class, making the award of equitable relief and/or restitution appropriate to the



KAZEROUNI LAW GROUP, APC

Class in its entirety.

79. Certification of particular issues would move the litigation forward efficiently and would save money, time, and judicial resources for all involved, regardless of whether the action as a whole might be certified.

**FIRST CAUSE OF ACTION**

**Violations of the Consumer Legal Remedies Act ("CLRA")**

**(Cal. Civ. Code §§ 1750, *et seq.*)**

**(On Behalf of Plaintiffs and the California Subclass)**

80. Plaintiffs reallege and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

81. Polaris is a "person" under California Civil Code § 1761(c).

82. Plaintiffs and the Subclass are "consumers" under California Civil Code § 1761(d) because they purchased Class Vehicles primarily for personal, family, or household use.

83. The purchase of Class Vehicles by Plaintiffs and the Subclass, constitute "transactions" within the meaning of California Civil Code § 1761(e).

84. The Class Vehicles are "goods" within the meaning of California Civil Code § 1761(a).

85. Plaintiffs reserve the right to amend the Complaint should Defendant, within thirty (30) days of receiving the CLRA Demand, fail to provide Plaintiff with an appropriate correction, repair, replacement, or other remedy, and offer no relief or cure for the Class Members.

**SECOND CAUSE OF ACTION**

**Violations of California's Unfair Competition Law ("UCL"),**

**(Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

**(On Behalf of Plaintiffs and the California Subclass)**

86. Plaintiffs reallege and incorporates herein by reference the allegations



KAZEROUNI LAW GROUP, APC

contained in all preceding paragraphs, and further alleges as follows:

87. Plaintiffs bring this cause of action against Defendant on behalf of themselves and the California Subclass for violation of the UCL.

88. The UCL defines "unfair business competition" to include any "unlawful, unfair or fraudulent" act or practice.

89. The UCL imposes strict liability. Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—only that such practices occurred.

90. Defendant's acts, omissions, practices, and non-disclosures alleged throughout this Complaint constitute business acts and practices.

91. Defendant's acts, omissions, practices and non-disclosures alleged throughout this Complaint constitute unlawful, unfair, and fraudulent business acts and practices because it has the capacity to deceive reasonable consumers, including Plaintiffss and the California Subclass, as to the benefits and effectiveness of the Class Vehicles and, thereby, the Class Vehicles' security.

92. Defendant had a duty to disclose the Defect based on its superior knowledge as the designers, manufacturers, sellers, marketers, and/or warrantors of the Class Vehicles, and as further alleged in this Complaint.

93. Defendant violated Cal. Bus. & Prof. Code § 17200 by engaging in "unfair competition," including through "unlawful, unfair, or fraudulent business acts or practices" and "unfair, deceptive, untrue, or misleading advertising." Defendant's violations include:

a. Advertising, marketing, distributing, selling, and leasing the Class Vehicles when Defendant knew those vehicles were defective and unable to reliably and safely perform their intended use;
b. Failing to disclose the true nature, scope, and extent of the Defect;
c. Concealing material facts regarding the Class Vehicles—i.e., that their primary clutch was defective and unable to reliably and safely perform



KAZEROUNI LAW GROUP, APC

their intended use; and

d. Failing to provide a reasonable fix for the Class vehicles.

94. Defendant's misconduct is "unlawful" under the UCL because it violates:

a. California's common law prohibition against fraudulent concealment,;

b. The CLRA;

c. The Song-Beverly Consumer Warranty Act ("SBCWA");

d. The Transportation Recall Enhancement, Accountability, and Documentation Act (the "TREAD Act"), 49 U.S.C. 30101, *et seq.*, by failing to timely inform NHTSA of the nature, extent, and scope of the Defect and by allowing the Class Vehicles to continue to be sold, leased, and used in a dangerous and defective condition; and

e. The implied warranty provisions of Cal. Comm. Code § 2313.

95. Defendant's acts and omissions constitute "unfair" business practices under the UCL because:

a. Defendant engaged in a misleading and deceptive practice of knowingly or intentionally selling the Class Vehicles, all of which are have the Defect;

b. Defendant's acts and omissions offend an established public policy of transparency in the sale or lease of consumer vehicles, and it engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers; and

c. The harm to Plaintiff and the California Subclass grossly outweighs the utility of Defendant's practices.

96. Defendant's deceptive practices constitute fraudulent business acts or practices because it deceived Plaintiffs and are highly likely to deceive members of the consuming public into purchasing a Class Vehicle that, unbeknownst to Plaintiffs and the California Subclass, were dangerously defective and unsuitable for its intended purpose.



KAZEROUNI LAW GROUP, APC

97. Defendant has engaged in deceptive, misleading, unfair, unconscionable, and fraudulent acts and practices that have caused actual damages to Plaintiffs and the California Subclass members, as described herein.

98. Defendant's intentional concealment of the Defect and its false, deceptive, misleading, and confusing omissions would be material to any ordinary, average, and objectively reasonable consumer's decision whether to buy or lease a Class Vehicle, given that the Defect is central to the vehicles' functionality and it pertains to the secure and reliable operation of the Class Vehicles. No reasonable consumer, including Plaintiffs, would have purchased or leased a Class Vehicle but for Defendant's acts, practices, omissions, and active concealment of the Defect.

99. Any ordinary, average, objectively reasonable consumer acting reasonably in the circumstances would have been deceived by Defendant's acts and practices, including the omissions described herein.



100. As a direct, foreseeable, and proximate result of Defendant's deceptive practices, Plaintiffs and every member of the California Subclass:

a. Purchased or leased a vehicle they otherwise would not have purchased or leased or paid more than they otherwise would have;
b. Thereby suffered an ascertainable loss of money, property, and value of the Class Vehicles; and
c. Suffered actual damages and other economic harms because of the latent Defect, including the losses described in this Complaint.

101. Due to Defendant's original and continuing misconduct alleged throughout this Complaint, Plaintiffs and the California Subclass are entitled to injunctive, declaratory, and equitable relief, including an order, judgment, and other judicial action, decision, or proclamation:

a. Declaring that the Class Vehicles are defective;
b. Declaring that Defendant's conduct violated the UCL;
c. Declaring that Plaintiff and the California Subclass are entitled to

reimbursement or restitution for money spent on the Class Vehicles; and

d. Enjoining Defendant from continuing to violate the UCL and, in accordance with Bus. & Prof. Code § 17203, enjoining Defendant to commence a corrective advertising campaign.

102. Accordingly, Plaintiffs and the California Subclass demand all available relief including attorney's fees and costs; all available equitable, restitutionary, and injunctive relief; and other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

103. Plaintiffs allege, in the alternative to their other causes of action, that they lack an adequate remedy at law because monetary damages alone fail to make the Class Vehicles safe for continued operation. To do so, Plaintiffs require that the Defect be cured—and the cost of doing so, including parts and labor, potentially exceeds the amount of monetary damages suffered as a result of the diminution in value.

## THIRD CAUSE OF ACTION

**Violations of the Song-Beverly Consumer Warranty Act ("SBCWA"),**

**(Cal. Civ. Code §§ 1790, *et seq.*)**

**(On Behalf of Plaintiffs and the California Subclass)**

104. Plaintiffs reallege and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

105. Plaintiffs bring this cause of action against Defendant individually and on behalf of the California Subclass for Violations of the SBCWA.

106. California Civil Code § 1792 provides that, unless properly disclaimed, every sale of consumer goods is accompanied by an implied warranty of merchantability. Defendant did not at any time properly disclaim the warranty.

107. The Class Vehicles are "consumer goods" as defined in California Civil Code § 1791(a).



KAZEROUNI LAW GROUP, APC

108. Plaintiffs and the California Subclass are "buyers" as defined in California Civil Code § 1791(b).

109. Defendant is the "manufacturers" of the Class Vehicles under California Civil Code § 1791(j).

110. Defendant impliedly warranted that the Class Vehicles were fit for the ordinary purposes for which they were used and without defect.

111. This warranty formed the basis of the bargain with regard to the California Subclass members' purchase and lease of Class Vehicles.

112. Defendant knew, or at least should have known, that consumers expected the Class Vehicles to be secure and free from any defects, and as such, impliedly warranted to Plaintiffs and the California Subclass that the Class Vehicles were "merchantable" under California Civil Code §§ 1791.1(a) and 1792.

113. The Class Vehicles were and are not merchantable, and as such, Defendant breached its implied warranty, because:

a. The Class Vehicles do not have the quality that a buyer would reasonably expect due to the Defect;
b. The Defect renders the Class Vehicles susceptible to physical damage;
c. The Class Vehicles have a latent Defect that poses an unreasonable risk of manifesting and that in fact manifest in ways that pose a constant risk to bodily harm and compromise reliability;
d. Defendant denied and concealed the existence of the Defect; and
e. Defendant has refused and failed to provide the needed repairs and replacements to address and correct the Defect.

114. Plaintiffs and the California Subclass received the Class Vehicles in a condition that substantially diminishes their value, and which compromises the Class Vehicles' ability to be driven safely. As a result, Plaintiffs are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their vehicles, or the overpayment or diminution in value of their



KAZEROUNI LAW GROUP, APC

vehicles.

115. Defendant's breach of warranties proximately caused Plaintiffs and the California Subclass, collectively, to suffer damages.

116. Accordingly, Plaintiffs, individually and on behalf of the California Subclass, seek all available monetary damages (including compensatory and/or liquidated damages and punitive damages); attorney's fees and costs; all available equitable, restitutionary, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

**FOURTH CAUSE OF ACTION**

**Breach of Implied Warranty**

**(On behalf of Plaintiffs and the California Subclass)**

117. Plaintiffs reallege and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

118. Plaintiffs bring this count individually and on behalf of the California Subclass for breach of implied warranty.

119. The Class Vehicles are "goods" as defined in Cal. Com. Code §§ 2105(1) and 10103(a)(8).

120. The California Subclass members are "buyers" and "lessees" of the Class Vehicles as defined in Cal. Com. Code §§ 2103(1)(a) and 10103(a)(14).

121. Polaris, Inc is a "merchant," "seller," and "lessor" as define in Cal. Com. Code §§ 2104(1), 10103(c), and 10103(a)(16).

122. California law conferred an implied warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which they were to be used pursuant to Cal. Com. Code §§ 2314 and 10212.

123. The Class Vehicles are not merchantable, and as such Defendant breached its implied warranty, because:

a. The Class Vehicles do not have the quality that a buyer would reasonably expect due to the Defect;



KAZEROUNI LAW GROUP, APC

b. The Defect renders the Class Vehicles susceptible clutch failures leading to ejection of debris or clutch components;

c. The Class Vehicles have a latent Defect that poses an unreasonable risk of manifesting and that in fact manifest in ways that pose a constant risk to drivability and compromise reliability;and

d. Defendant has refused and failed to provide the needed repairs and replacements to address and correct the Defect.

124. Accordingly, Plaintiffs, individually and on behalf of the California Subclass, seeks all available monetary damages (including compensatory and/or liquidated damages and punitive damages) in an amount no less than the difference in value between what Plaintiffs and the California Subclass reasonably believed they were paying for and the value of the vehicle they actually received; attorney's fees and costs; all available equitable, restitutionary, and injunctive relief; and all other relief sought in the Prayer for Relief below or that is otherwise available and appropriate.

## FIFTH CAUSE OF ACTION

### Common Law Unjust Enrichment

### (On Behalf of Plaintiffs, the National Class and the California Subclass)

125. Plaintiffs reallege and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

126. Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and California Subclass against Defendant.

127. The elements of unjust enrichment are receipt of a benefit and unjust retention of the benefit at the expense of another.

128. Plaintiffs, Class Members and Subclass Members conferred non-gratuitous benefits upon Defendant by essentially paying more for Class Vehicles that were, upon information and belief, worth less than what was paid given the Defect.

KAZEROUNI LAW GROUP, APC

129. Plaintiffs, Class Members and Subclass Members allege that Defendant owe them money for the conduct alleged herein.

130. An undue advantage was taken from Plaintiff's, Class Members' and Sub-Class Members' lack of knowledge of the deception, whereby money was extracted to which Defendant had no legal right. Defendant is therefore indebted to Plaintiffs, Class Members and Subclass Members in a sum equal to the difference between what Plaintiffs, Class Members, and Subclass Members paid for their Class Vehicles and what the Class Vehicles were actually worth.

131. Defendant is therefore indebted to Plaintiffs, Class Members and Subclass Members in a sum certain for money had and received by Defendant, which Defendant in equity and good conscience should not retain.

132. Defendant is therefore liable to Plaintiffs, Class Members and Subclass Members in the amount unjustly enriched.

133. Defendant's retention of any benefit collected directly and indirectly from Plaintiffs, Class Members and Subclass Members violates principles of justice, equity, and good conscience. As a result, Defendant has been and continues to be unjustly enriched.

134. Plaintiffs, Class Members and Subclass Members are entitled to recover from Defendant all amounts that Defendant has wrongfully and improperly obtained, and Defendant should be required to disgorge to Plaintiffs, Class Members and Subclass Members the benefits it has unjustly obtained.

135. Defendant accepted or retained such benefits with knowledge that the rights of Plaintiffs, Class Members and Subclass Members were being violated for financial gain. Defendant has been unjustly enriched in retaining the revenues and profits from Plaintiffs, Class Members and Subclass Members, which retention under these circumstances is unjust and inequitable.

136. As a direct and proximate result of Defendant's unlawful practices and retention of the monies paid by Plaintiffs, Class Members and Subclass Members in

excess of what was promised, Plaintiffs, Class Members and Subclass Members have all suffered concrete harm and injury, including, but not limited to monetary loss in connection with their payments made to Defendant.

137. Defendant's retention of the non-gratuitous benefits on it by Plaintiffs, Class Members and Subclass Members would be unjust and inequitable.

138. Plaintiffs, Class Members and Subclass Members are entitled to seek disgorgement and restitution of wrongful profits, revenue, and benefits conferred upon Defendant in a manner established by this Court.

139. Plaintiffs, Class Members and Subclass Members request the Court enter an order awarding them restitution, rescission, and or/damages, and that they are entitled to recover their reasonable attorneys' fees.

140. Plaintiffs, Class Members and Subclass Members therefore also seek pre-and-post judgment interest and attorneys' fees and costs as allowed by statute, including without limitation those recoverable under Cal. Civ. Proc. Code § 1021.5, any common law "private attorney general" equitable doctrine, any "common fund" doctrine, any "substantial benefit" doctrine, and/or any equitable principles of contribution and/or other methods of awarding attorneys' fees and costs.

## PRAYER FOR RELIEF

141. Plaintiffs pray that judgment be entered against Defendant as follows:

a. That this action be certified as a class action;
b. That Plaintiffs be appointed as the representative of the National Class and California Subclass;
c. That Plaintiffs' attorneys listed below be appointed Class Counsel;
d. For an order declaring Defendant's conduct to be unlawful;
e. For an order compelling Defendant to make restitution to Plaintiffs, the Class and Subclass Members in an amount to be proven at trial;
f. For actual, compensatory, statutory and/or liquidated damages;
g. For pre- and post-judgment interest at the legal rate;

KAZEROUNI LAW GROUP, APC

h. For injunctive and other equitable relief as alleged herein and as necessary to protect the interests of Plaintiffs, and members of the Class and Subclass, and to prohibit Defendant from engaging in the unlawful, unfair, deceptive and fraudulent acts described above, including public injunctive relief pursuant to Cal. Bus. & Prof. Code § 17204;

i. For an order that Defendant engage in a corrective advertising campaign;

j. For an order of restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiffs and the members of the Class and Subclass as a result of its unlawful, unfair, and fraudulent business practices;

k. For actual damages, injunctive relief, restitution, and punitive damages pursuant to California Code of Civil Procedure § 1780;

l. For costs of this action and out-of-pocket expenses;

m. For attorneys' fees, pursuant to, *inter alia*, the common fund doctrine and/or Cal. Civ. Proc. Code § 1021.5; and

n. For such other and further relief that the Court deems available and proper.

//

//

//

//

//

//

//

//

//

KAZEROUNI LAW GROUP, APC

## JURY DEMAND

143. Plaintiffs, individually and on behalf of the National Class and the California Subclass, hereby demands a trial jury of all issues triable by right.

Dated: February 1, 2023

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By: /s/ Ryan L. McBride
Ryan L. McBride, Esq.
*Attorneys for Plaintiff*

KAZEROUNI LAW GROUP, APC